UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE P. CHILDS | No. 2:15-cv-574-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") determining that plaintiff did not continue to be disabled for purposes of receiving Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff's disability ceased as of March 2012.  (ECF No. 14.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 15.)  No optional reply brief was filed.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 17.)

1

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

I.   BACKGROUND

Plaintiff was born on November 20, 1965, has completed at least two years of college, can read and write in English, and previously worked as a customer service representative and a pressroom assistant.  (Administrative Transcript ("AT") 50-54,101, 256, 262.)[2]  In a previous decision dated March 22, 2007, plaintiff was found disabled as of February 1, 2007.  (AT 25.)  However, in the course of a subsequent continuing disability review, the Commissioner determined that plaintiff was no longer disabled as of March 2012.  (Id.)  That determination was upheld upon reconsideration after a hearing before a disability hearing officer on November 5, 2012. (AT 120-49.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on March 11, 2013, and at which plaintiff, represented by an attorney, testified.  (AT 80-100.)  A supplemental hearing was also held on July 2, 2013, at which plaintiff was again represented by counsel, and in the course of which the ALJ heard testimony from a medical expert, a mental health expert, and a vocational expert ("VE").  (AT 45-79.)

In a decision dated August 12, 2013, the ALJ determined that plaintiff's disability had ceased as of March 2012.  (AT 25–41.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 12, 2015.  (AT 1-6.)  Plaintiff then filed this action in federal district court on March 12, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the sole issue of whether the ALJ improperly discounted plaintiff's own testimony concerning his symptoms and functional limitations attributable to his impairments.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III. <u>LEGAL STANDARD</u>

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007), quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. <u>DISCUSSION</u>

"A Social Security disability benefits claimant is no longer entitled to benefits when substantial evidence demonstrates (1) there has been any medical improvement in the claimant's impairment and (2) the claimant is now able to engage in substantial gainful activity." <u>Attmore v. Colvin</u>, 2016 WL 3563596, at *1 (9th Cir. Jun. 30, 2016) (citation and punctuation marks omitted).  As the Ninth Circuit Court of Appeals explained:

> Medical improvement is defined as any decrease in the medical severity of a recipient's impairment, and requires a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).  The Commissioner's regulations prescribe a specific baseline for this comparison: an ALJ must compare the medical severity of the impairment(s) present at the time of the most recent favorable medical decision—that is, when the claimant was last found disabled or continued to be disabled—to the medical severity of that impairment(s) at the time of the comparison.
>
> Making this comparison is straightforward in ordinary termination cases where the ALJ finds a claimant is disabled (or continues to be disabled) in one decision and, in a later decision, finds the claimant has medically improved.  In those cases, the most recent favorable medical decision is an earlier decision, and the severity of the claimant's impairment at the time of that decision provides the relevant baseline for comparison.

Attmore, 2016 WL 3563596, at *3 (citations and punctuation marks omitted).

In this case, the ALJ identified the most recent favorable medical decision, also known as the comparison point decision ("CPD"), as the March 22, 2007 decision, finding that plaintiff was disabled as of February 1, 2007. (AT 27.) At the time of the CPD, plaintiff suffered from the following medically determinable impairments: "major depression, severe, without psychotic features and a personality disorder not otherwise specified with narcissistic features; diabetes mellitus type II with symptoms consistent with peripheral neuropathy but no other complications and intermittent lower back pain." (Id.) At that time, it was determined that plaintiff could physically perform a heavy range of work, but was "unable to sustain the concentration, persistence and/or pace needed for substantial gainful activity in a competitive environment; was unable to respond appropriately to changes in a work setting or complete a normal workday or workweek without interruptions from psychologically based symptoms." (Id.)

In comparison, the ALJ found that, at the time of the alleged medical improvement in March 2012, plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work, and "mentally retains the capacity to understand, remember and carry out simple job instructions; interact with and respond appropriately to supervisors, coworkers or the public; as well as respond appropriately to routine work-related changes or stresses." (AT 29.) Based on plaintiff's age, education, work experience, and RFC, the ALJ concluded, in reliance on the VE's testimony, that plaintiff had been able to perform a significant number of jobs in the national economy as of March 2012. (AT 33.)

On appeal, plaintiff does not challenge the ALJ's evaluation of the medical evidence or the vocational expert's testimony. However, plaintiff contends that, in formulating plaintiff's RFC and determining that medical improvement related to plaintiff's ability to work occurred as of March 2012, the ALJ improperly discounted the credibility of plaintiff's own testimony regarding his continuing symptoms and functional limitations. That argument is unpersuasive.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

////

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the ALJ did not entirely reject plaintiff's claims of pain, numbness, tingling, fatigue, depression, and related symptoms, but instead gave plaintiff the benefit of the doubt regarding many of his subjective complaints, ultimately restricting plaintiff to a reduced range of sedentary work. Nevertheless, to the extent that plaintiff alleged additional functional

5

limitations beyond the RFC, the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's credibility.

First, the ALJ properly found that plaintiff's testimony regarding disabling symptoms and functional limitations was inconsistent with the medical opinion evidence.

Around the time that plaintiff was previously found disabled in early 2007, the consultative evaluating psychiatrist, who personally examined plaintiff, found, *inter alia*, that because of plaintiff's low energy, insomnia, and increased fatigue, he had a severe problem with persistence and pace. (AT 358.) Furthermore, the state agency psychiatrist, who reviewed plaintiff's records, opined that plaintiff had several marked mental limitations and was unable to sustain concentration, persistence, and pace in a competitive work environment. (AT 27, 388-90.)

By contrast, on February 17, 2012, the consultative evaluating psychologist, Dr. Amy Eargle, who reviewed plaintiff's prior records and personally examined plaintiff the month before his disability was deemed to have ceased, diagnosed plaintiff with "major depression, recurrent, mild" and opined that he was unimpaired in his ability to manage his own funds, perform simple and repetitive tasks, perform complex and detailed tasks, and respond appropriately to novel work situations including those involving urgency or safety considerations; mildly impaired in his ability to understand/ implement/remember instructions without special supervision or additional guidance, and complete a normal workweek and maintain regular attendance; and moderately impaired in his ability to interact appropriately with supervisors, coworkers, and the public, as well as in his ability to cope with changes in routine and stress. (AT 32, 434-39.) Additionally, at the July 2, 2013 hearing, mental health expert and psychiatrist, Dr. Herbert Tanenhaus, testified that he essentially agreed with Dr. Eargle's assessed limitations, and clarified that plaintiff would be capable of at least occasional interactions with coworkers and could act appropriately with supervisors. (AT 32, 56-61.) Those mental health opinions were adopted by the ALJ, and support the ALJ's finding that medical improvement related to plaintiff's ability to work occurred, when compared to the earlier mental health opinions from 2007. (AT 32-33.) See Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (noting that moderate mental limitations

do not even require vocational expert testimony).[3]

Additionally, with respect to plaintiff's physical impairments, medical expert Dr. Lowell Sparks at the July 2, 2013 hearing diagnosed plaintiff with diabetes type two (fairly well controlled on insulin and oral medication); diabetic peripheral neuropathy in the lower extremities; early diabetic renal disease; controlled hypertension; mild obstructive sleep apnea; a history of cellulitis of the right forefoot, which healed after surgery in 2010; and obesity. (AT 31, 48-49.) Dr. Sparks essentially opined that plaintiff was capable of performing sedentary work with occasional postural activities and no manipulative or sensory limitations, and the ALJ adopted Dr. Sparks's opinion. (AT 31, 49-50.)

The above-mentioned medical opinions, which relate to March 2012 onwards, constitute substantial evidence, and to the extent that plaintiff alleged more severe symptoms and functional limitations, the ALJ reasonably relied on such evidence to discount plaintiff's allegations.

Second, the ALJ properly referenced a lack of objective findings to support at least some of plaintiff's alleged symptoms and functional limitations. By way of example, the ALJ noted that although plaintiff alleges that fibromyalgia and osteoarthritis cause him to suffer from widespread joint and muscle pain, the record "does not show the claimant being diagnosed with either of these conditions by his treating physician or him alleging to his physician that he suffers from pain throughout his musculoskeletal system." (AT 30-31.) Furthermore, although plaintiff testified regarding blurry vision allegedly attributable to his diabetes, the medical evidence did not document any vision problems caused by diabetes. (AT 30.) Even though a lack of objective findings to support the alleged severity of symptoms attributable to a medically determinable impairment cannot be the sole reason for discounting a claimant's credibility, it is nonetheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

////

---

[3] Although the ALJ's RFC did not specifically include a limitation to only occasional contact with co-workers, the VE noted that the representative occupations identified by the VE in response to the RFC involved only limited social interaction with others. (AT 58-61.) The VE and mental health expert also clarified that plaintiff would be able to perform those representative occupations despite his stress limitations, because they were unskilled, simple and repetitive, low-stress occupations. (AT 65-68.)

1          Third, the ALJ legitimately observed that, despite alleging disabling mental impairment, plaintiff did not seek mental health treatment from a psychologist, psychiatrist, or other mental healthcare provider. (AT 32, 92.) Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch, 400 F.3d at 681. "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Molina, 674 F.3d at 1113 (citation and quotation marks omitted). Here, plaintiff did not address or dispute the ALJ's finding regarding plaintiff's failure to seek mental health treatment, and has offered no plausible explanation. Plaintiff does not contend that he lacks insurance, nor does the record suggest that plaintiff's mental health impairments were so acute as to render him unable to seek treatment or comply with a treatment regimen.

          Fourth, the ALJ rationally found that many of plaintiff's impairments were controlled with medication. (AT 28, 30-31.) A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). As the ALJ observed, the medical records indicate that plaintiff's diabetes and hypertension were generally adequately controlled with insulin and oral medication, and although a sleep study performed on January 9, 2013, was indicative of mild sleep apnea, the evidence showed that plaintiff was able to control his symptoms using a continuous positive airway pressure ("CPAP") machine. (AT 30-31, 857.) Plaintiff's briefing again fails to address or contest the ALJ's finding regarding the efficacy of plaintiff's treatment.

          Consequently, the court concludes that the ALJ's credibility finding was supported by the record and by the proper analysis. Although an alternative interpretation of the evidence may be possible, the court defers, as it must, to the ALJ's reasonable and rational resolution of any ambiguities and inconsistencies. As the Ninth Circuit Court of Appeals explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as

> here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

V.      CONCLUSION

In sum, the court finds that ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  July 22, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE